**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | 23 Civ. _2770_ (PAE) |
| Plaintiff, | |
| v. | **STIPULATION AND ORDER OF** **SETTLEMENT AND DISMISSAL** |
| ARTIMUS CONSTRUCTION, INC., | |
| Defendant. | |

## INTRODUCTION

This Stipulation and Order of Settlement and Dismissal (this "Stipulation" or this "Stipulation and Order") is entered into between plaintiff the United States of America (the "United States") and defendant Artimus Construction, Inc., along with its subsidiaries and affiliates (collectively, "Artimus" or "ACI") that own and operate a number of rental complexes, including Susan's Court and Chelsea Park in New York, New York;

WHEREAS, the United States is bringing the above-captioned action (the "Action") to enforce provisions of the Fair Housing Act ("FHA"), codified at 42 U.S.C. §§ 3601–3619. Specifically, the United States' complaint in this Action alleges that Artimus has engaged in a pattern or practice of discrimination, and has denied rights to a group of persons in a manner raising an issue of general public importance, by failing to design and/or construct the Susan's Court and Chelsea Park complexes, two residential apartment complexes in New York, New York, with the features of accessible and adaptive design and construction required by the FHA, 42 U.S.C. § 3604(f)(3)(C);

WHEREAS, this Stipulation and Order is not, and shall not be deemed or construed as, an admission of fault or liability;

WHEREAS, Susan's Court and Chelsea Park are subject to the accessible design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(c);

**A.      Defendant**

WHEREAS, ACI is a New York corporation that, directly and/or operating through its subsidiaries and affiliates, developed Susan's Court and Chelsea Park and, in that capacity, participated in the design and/or construction of these apartment complexes;

**B.      Relevant Requirements of the Fair Housing Act**

WHEREAS, the FHA provides that residential buildings that are designed and constructed for first occupancy after March 13, 1991, and which have four or more dwelling units and one or more elevators, are Covered Multifamily Dwellings and must include certain basic features of accessible design as set forth in 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A);

WHEREAS, the accessible and adaptive design provisions of the FHA require that for Covered Multifamily Dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space. 42 U.S.C. § 3604(f)(3)(c) (these provisions and features are referred to herein as the "Accessible Design Requirements");

**C.      Conditions at Susan's Court and Chelsea Park**

WHEREAS, Susan's Court is an apartment building located at 454 Manhattan

Avenue, in Manhattan.  The Susan's Court complex, which was completed in or around 2008, contains 125 rental units and has elevator access. The public and common features at Susan's Court include a lobby, a roof terrace, and a fitness center;

WHEREAS, an inspection of Susan's Court identified, *inter alia*, the following conditions at Susan's Court that the United States alleges fail to meet the Accessible Design Requirements:

- Excessively high threshold at the building entrance and lack of handrails on both sides of the ramp that interfere with the accessible route into the building for people who use wheelchairs;

- Excessively high thresholds at the entrances into a number of the individual units that interfere with accessible routes for people who use wheelchairs;

- Toilets placed too close or too far from the side wall, which obstruct access by people who use wheelchairs, in most of the individual units;

- Lack of sufficient clear floor space to allow people in wheelchairs to access the kitchen sinks or ranges in most of the individual units;

- Locations of electrical outlets or environmental controls in most or all of the individual units that make them inaccessible to people who use wheelchairs;

- Excessively high thresholds at the door to the balconies in individual units that interfere with accessible routes for people who use wheelchairs;

- Insufficient clear floor space in bathrooms in all the individual units;

- Excessively high threshold at the entrance to the courtyard for residents; and

- Mailboxes mounted too high to accommodate persons who use wheelchairs.

WHEREAS, Chelsea Park is an apartment complex located at 260 West 26th Street in Manhattan.  The Chelsea Park complex, which was completed in or about 2014, contains 204 rental units and has elevator access.  The public and common features at Chelsea Park include a lounge for residents, a children's playroom, a fitness center, laundry rooms, and a roof terrace;

WHEREAS, an inspection of Chelsea Park identified, *inter alia*, the following conditions at Chelsea Park that the United States alleges fail to meet the Accessible Design Requirements:

- Excessively high thresholds at the entrances to most or all of the individual units that interfere with accessible routes for people who use wheelchairs;

- Toilets placed too close or too far from the side wall, which obstruct access by people who use wheelchairs, in a number of the individual units;

- Excessively high thresholds to the bathrooms and the balconies in a number of the individual units that interfere with accessible routes for people who use wheelchairs;

- Lack of sufficient clear floor space to allow people in wheelchairs to access the kitchen sinks or ranges in a number of the individual units;

- Locations of electrical outlets or environmental controls in most or all of the individual units that make them inaccessible to people who use wheelchairs;

- Excessively high thresholds at the entrances to the roof deck, the children's playroom, the trash rooms, and the yoga room that interfere with accessible routes to these common areas for people who use wheelchairs; and

- Mailboxes mounted too high to accommodate persons who use wheelchairs.

**D.     Agreement of the Parties to this Stipulation and Order**

WHEREAS, the parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a);

WHEREAS, the parties' agreement to this Stipulation and Order is not intended to and does not limit Artimus, individually or collectively, from instituting a separate action seeking contribution, or damages in the nature of indemnification or breach of contract or for any other reason from any individual or entity involved in the design and/or construction of any property that is the subject of this Stipulation; and

WHEREAS, Artimus agrees to make modifications to Susan's Court and Chelsea Park as set forth herein and to undertake inspections and appropriate modifications to the Additional Properties (as defined below).

**It is hereby AGREED, by and between the parties:**

### I.   COMPLIANCE WITH THE FHA

1.   Artimus and each of its officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them, agree that they will not discriminate on the basis of disability as prohibited by the FHA, 42 U.S.C. § 3604.

### II.   RETROFITS AT SUSAN'S COURT AND CHELSEA PARK

2.   The United States alleges that Susan's Court and Chelsea Park were not designed or constructed in accordance with the FHA or the Fair Housing Accessibility Guidelines, Design Guidelines for Accessible/Adaptable Dwellings, 56 Fed. Reg. 9472 (Mar. 6, 1991) (the "Guidelines"). Artimus agrees to address the conditions alleged to be FHA violations at Susan's Court by making the modifications set forth in Appendices A-1 and B-1, and agrees to address the conditions alleged to be FHA violations at Chelsea Park by making the modifications set forth in Appendices A-2 and B-2.

**A.   Modifications to the Public and Common Use Areas**

3.   The United States alleges that certain of the public and common use areas at Susan's Court and Chelsea Park as herein enumerated do not meet the requirements of any recognized safe harbor for compliance with the FHA. Artimus agrees to modify the public and common use areas of Susan's Court and Chelsea Park by taking the actions described herein and in Appendices A-1 and A-2, respectively.

4.   As soon as reasonably possible, but no later than six (6) months after the entry of this Stipulation and Order by the Court, Artimus shall use commercially reasonable efforts to

finish all the retrofits listed in Appendices A-1 and A-2. Artimus shall make reasonable efforts to minimize inconvenience to residents of Susan's Court and Chelsea Park in making such retrofits.

5.       Within thirty (30) days of the entry of this Stipulation and Order, Artimus shall post a written notice on the lobby bulletin board at Susan's Court and Chelsea Park stating that the common area retrofits required under this Stipulation will be performed in the public and common use areas at Susan's Court and Chelsea Park. Such notice shall conform to Appendix C.

6.       Artimus shall certify to the United States in writing that the notices required by Paragraph 5 have been posted.

**B.       Modifications to Dwelling Unit Interiors**

7.       The United States alleges that certain of the dwelling unit interiors of Susan's Court and Chelsea Park as herein enumerated do not meet the requirements of any recognized safe harbor for compliance with the FHA. Artimus agrees to modify certain of the dwelling unit interiors of Susan's Court and Chelsea Park by taking the actions described herein and in Appendices B-1 and B-2, respectively.

8.       For each unit at Susan's Court listed in Appendix B-1 and each unit at Chelsea Park listed in Appendix B-2, Artimus shall use commercially reasonable efforts to finish the retrofits listed in Appendix B-1 and Appendix B-2 no later than six (6) months from the entry of this Stipulation and Order (unless otherwise specified in Appendices B-1 and B-2) or, as to retrofits to be made upon request of a resident, no later than three (3) months after the request. Artimus shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

9.     Within sixty (60) days from the date of the entry of this Stipulation and Order, Artimus shall provide by electronic means a notice to each resident who resides in an individual dwelling unit that is subject to being retrofitted at Susan's Court and Chelsea Park per Appendices B-1 and B-2 that: (1) Artimus has agreed to retrofit certain features of the units to make them more accessible; (2) the retrofits set forth in Appendices B-1 and B-2 will be commenced within sixty (60) days after the notice is electronically delivered (unless otherwise specified in Appendices B-1 and B-2) or, as to retrofits to be made upon request of a resident of the units, within sixty (60) days of written request by the resident; (3) Artimus will use commercially reasonable efforts to complete the retrofits within three (3) months after commencement, unless otherwise specified in this Stipulation; and (4) the scheduling of the retrofits will take into account the preferences and convenience of the resident and that the reasonable costs of relocation, if necessary, will be provided in advance.  The notice shall be substantially in the form of Appendix D.

10.     Artimus shall certify to the United States in writing that the notices described in paragraph 9 have been distributed and shall specify the manner in which they were distributed, within thirty (30) days after such distribution.  Such certification shall include the names and addresses of the persons to whom the notices were distributed.

### III.    ADDITIONAL PROPERTIES

11.     In addition to Susan's Court and Chelsea Park, Artimus has, after March 13, 1991, designed and/or constructed for occupancy certain additional multifamily housing complexes identified in Appendix E (collectively referred to as "Additional Properties").

12.     Within sixty (60) days of the entry of this Stipulation and Order, Artimus shall retain one or more licensed design professionals with expertise regarding the FHA and the Accessible Design Requirements (the "Surveyor(s)"), approved by the United States, to survey

each of the Additional Properties to determine what actions, if any, must be taken to bring these properties into substantial compliance with the accessibility requirements of the FHA.

13.     For purposes of conducting surveys and reporting survey results as required by Section III of this Stipulation, the Surveyor(s) shall measure and report compliance with the FHA by reference to one of the following standards (each a "Standard"), where such a single Standard has been used in its entirety: (*i*) the Guidelines; or (*ii*) a standard that the Department of Housing and Urban Development has designated as an FHA safe harbor.  For each Additional Property, Artimus shall select a single Standard that shall be applied by the Surveyor to that property. There is no requirement that Artimus select or that the Surveyor apply the same Standard to each of the Additional Properties.

14.     The Surveyor(s) shall physically inspect (*i*) all common and public use areas at each Additional Property, and (*ii*) the conditions specified in <u>Appendices B-1 and B-2</u> to this Stipulation in representative dwelling units (based upon unit type, layout, amenities) comprising no less than five percent (5%) of the units in each such property.

15.     Artimus shall provide the Surveyor(s) with the best available information regarding the size and location of grab bar reinforcements in the dwelling units' bathrooms in the Additional Properties. Such information shall include a physical inspection of one dwelling unit's bathroom within each property to ascertain the presence and length of a grab bar reinforcement, and a certification from Artimus that, based on its present knowledge and belief, similar reinforcements were installed in all other units of that property during construction. Neither Artimus nor the Surveyor(s) will be required to use destructive testing or probing to comply with the requirements of this paragraph.

16.     Within one hundred twenty (120) days of the entry of this Stipulation and Order, unless otherwise agreed to in writing by the parties, Artimus shall provide the United States with

Case 1:23-cv-02770-PAE   Document 5   Filed 04/04/23   Page 9 of 27

a schedule of the surveys to be performed for each of the Additional Properties, along with a detailed description of the scope and methodology of each survey, including how the Surveyor(s) will identify and survey the representative unit types, and with survey instructions developed by Artimus and approved by the United States. The parties agree that the in-unit conditions to be surveyed in the Additional Properties shall be those on Appendices B-1 and B-2 to this Stipulation. No survey may be commenced absent the approval of the United States as to the schedule, scope, and methodology of the survey. Each survey shall include photographic documentation of any feature that does not comply with the requirements of the FHA.

17.     Artimus shall complete surveys of the Additional Properties within twelve (12) months of the entry of this Stipulation and Order, unless otherwise agreed to in writing by the parties. The United States and Artimus each shall have the right to accompany the Surveyor(s) on his or her survey of each property, and the Surveyor(s) shall provide the United States with reasonable notice of each survey, at least 30 days in advance of any survey. For each Additional Property, within thirty (30) days following the completion of the physical survey of that property, the Surveyor(s) shall provide to the United States and Artimus a detailed written report setting out the scope and methodology of each survey and all of the information set forth in paragraph 16 above, including details and photographic documentation regarding any features that do not comply with the Standard applicable to that Additional Property. Each such report shall be treated as confidential settlement materials by the United States and shall not be disclosed to any person or agency except as required by law; provided, however, that the United States shall give Artimus written notice no less than thirty (30) days prior to any such disclosure so that Artimus may have a reasonable opportunity to obtain a court order preventing such disclosure before it occurs.

Case 1:23-cv-02770-PAE  Document 5  Filed 04/04/23  Page 10 of 27

18.     Within ninety (90) days of receipt of each report of the Surveyor(s), unless otherwise agreed to in writing by the parties, Artimus shall submit to the United States a proposal for performing the retrofits required to bring the common and public use areas and the individual dwelling units into compliance with the accessibility requirements or the FHA. Artimus shall not be deemed to have admitted liability based on its proposing or making a retrofit to any condition in an Additional Property.  Each such proposal shall be treated as confidential settlement materials by the United States and shall not be disclosed to any person or agency except as required by law; provided, however, that the United States shall give Artimus written notice no less than thirty (30) days prior to any such disclosure so that Artimus may have a reasonable opportunity to obtain a court order preventing such disclosure before it occurs.

19.     Within sixty (60) days of receipt of each retrofit proposal, unless otherwise agreed to in writing by the parties, the United States shall notify Artimus in writing of any objections to the proposal.  If there are no written objections, Artimus shall proceed with the modifications as specified; and if the United States submits objections, the parties shall endeavor to expeditiously and in good faith resolve any objections, after which Artimus shall, within thirty (30) days (unless otherwise agreed to in writing by the parties) submit a revised retrofit proposal.

20.     The United States shall have thirty (30) days to provide written objections to a revised retrofit proposal.  If, after good faith negotiations, the parties are unable to resolve any differences concerning appropriate modifications, either party may submit a request to the Court to reinstate the Action to, *inter alia*, seek a resolution of the dispute.

21.     If there are no written objections by the United States within the foregoing 30-day period, or, if there are objections, then after such objections are resolved consensually or in Court, Artimus shall proceed with the modifications it specified in the revised retrofit proposal as follows:

a. Unless otherwise agreed to in writing by the parties, Artimus shall use commercially reasonable efforts to make the retrofits to common or public use areas of each Additional Property within twelve (12) months of the United States' approval of a retrofit proposal for that property or the entry of a court order regarding the appropriate retrofits for that property. Artimus shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

b. Artimus shall commence all retrofits to individual dwelling units no later than sixty (60) days after a resident's written request and use commercially reasonable efforts to complete any retrofit within three (3) months after commencement. Artimus shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

22.     Within thirty (30) days of the United States' approval of a retrofit proposal for a particular Additional Property, unless otherwise agreed to in writing by the parties, Artimus shall provide an electronic notice to each resident of a unit that is subject to being retrofitted in any manner set forth in the applicable retrofit proposal that (1) Artimus agreed to retrofit certain features of the units to make them more accessible; (2) the features of accessible and adaptive design can be retrofitted in a unit upon written request of the resident or prospective resident; (3) the retrofits offered will be at no cost to the unit resident or prospective resident; and (4) the scheduling of the retrofits will take into account the preferences and convenience of the resident and that relocation costs, if any, will be provided in advance. The notice(s) shall be substantially in the form of <u>Appendix D</u>, modified as appropriate to reflect the particular property at issue and the applicable retrofit proposal.

23.     Artimus shall certify to the United States in writing that the notices described in paragraph 22 for the Additional Properties have been distributed and shall specify the manner in which they were distributed as part of its annual reporting requirement. Such certification shall include the names and addresses of the persons to whom Artimus distributed the notices.

24.     Artimus shall pay all costs associated with the surveys and modifications/retrofits to the Additional Properties, without prejudice to its ability to seek contribution or indemnification from other sources.

### IV.     NO ADVERSE ACTION

25.     Neither present nor future residents of Susan's Court, Chelsea Park, or any of the Additional Properties may be charged any additional rent, deposit, fee, or other consideration for the units in which retrofits are or may be implemented because of completed, contemplated, or possible retrofits required under this Stipulation. Artimus shall take no adverse action against any present or future resident of Susan's Court, Chelsea Park, or any of the Additional Properties because such person requests to have his or her apartment, or prospective apartment, modified in accordance with this Stipulation. Nothing in this paragraph, however, shall restrict or impede Artimus's rights with respect to any of the properties that are the subject of this Stipulation to continue, in a non-discriminatory manner, to lawfully establish and raise rents consistent with their business goals and obligations and with market conditions, including increasing rents after the expiration of a current lease due to an increase in the market value of the unit, whether or not such increase is on account of upgrades to such unit (other than retrofits required under this Stipulation) done at or about the same time as retrofits required under this Stipulation. Performance of the retrofits required by the terms of this Stipulation does not constitute a diminution in services provided at Susan's Court, Chelsea Park, or any Additional Property.

## V.     IMPEDIMENTS TO PERFORMANCE

26.      In the event that any act or omission beyond Artimus's control and occurring without its fault or negligence affects the performance of any requirement in Sections II and III of this Stipulation, the parties shall endeavor, in good faith, to determine whether modifications to this Stipulation are necessary. In particular, if a resident at Susan's Court, Chelsea Park, or an Additional Property refuses (whether lawfully or not) to allow a retrofit or to vacate a unit such that a retrofit required to be made under this Stipulation may not be made, Artimus shall not have any obligation to perform the retrofit.  Artimus shall take reasonable measures to secure a resident's consent and document for the United States the efforts it made and the reason(s) given for refusal. Nothing herein shall be construed as requiring Artimus to bring a lawsuit against a resident who refuses to allow Artimus to perform a retrofit to that resident's unit as specified in Sections II or III of this Stipulation; and nothing herein shall be construed as requiring Artimus to perform any act beyond the expiration of this Stipulation except with respect to work commenced prior to such expiration.

## VI.     NEUTRAL INSPECTOR

27.      Artimus shall enter into a contract with a neutral inspector approved by the United States ("Inspector") to conduct on-site inspections of all retrofits performed under this Stipulation to determine whether modifications have been made in compliance with the specifications in Appendices A-1 and B-1 at Susan's Court, Appendices A-2 and B-2 at Chelsea Park, and retrofit proposals to be agreed upon for the Additional Properties. The Inspector shall have expertise in the design and construction requirements of the FHA.  The Inspector may be the same person as the Surveyor.

28.     The Inspector may, upon request of Artimus, review and comment upon the sufficiency of all proposed retrofits in writing in advance of any retrofit by Artimus, but such review and comment shall be completed no later than thirty (30) days after the request.

29.     An initial inspection of Susan's Court and Chelsea Park shall take place within the later of (a) thirty (30) days after the completion of all of the retrofits set forth in, respectively, Appendices A-1 and B-1 and Appendices A-2 and B-2 (except for retrofits to be made at a resident's request), or (b) six (6) months prior to the expiration of this Stipulation, or as soon thereafter as practicable.

30.     For each initial inspection, Artimus shall give the United States at least twenty-one (21) days prior notice of the inspection and shall give the United States an opportunity to have its representative present for the inspection.

31.     The Inspector shall set out in writing the results of his or her inspection, including any deficits, and shall send that report to Artimus and to the United States.[1]  The report shall state whether the retrofits required by the applicable Appendix have been completed, and shall list any required retrofits that were not completed.

32.     The Inspector and Artimus shall follow the process set forth above in paragraphs 30 through 31 to determine whether the retrofits specified in the approved retrofit proposals for the Additional Properties have been made.

33.     If the inspection indicates that not all of the required retrofits have been made as specified in the applicable Appendices, or retrofit proposals, Artimus shall use commercially reasonable efforts to correct any deficiencies for which Artimus is provided access within ninety

---

[1]     For purposes of this Stipulation, notices provided to the United States shall be addressed to Chief, Civil Rights Unit, Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, Third Floor, New York, NY 10007.  Electronic courtesy copies also shall be delivered to the undersigned Assistant United States Attorneys.

(90) days and shall pay for another inspection by the same Inspector to certify that the deficiencies have been corrected. This process shall continue until the Inspector certifies that all of the necessary modifications for which Artimus has been provided access have been made. Artimus shall pay all of the Inspector's reasonable costs associated with these inspections, and such payments shall be made without regard to the Inspector's findings. Upon reasonable notice, representatives of the United States shall be permitted to inspect the modifications and/or the third-party inspection reports provided for in this Stipulation, to ensure compliance.

34.     Nothing in this Stipulation shall relieve Artimus of its obligations to schedule inspections and/or correct deficiencies as set forth in this Section (including, but not limited to, inspection of the retrofits that Artimus is required to make prior to the expiration of this Stipulation) even if such obligations extend beyond the term of this Stipulation; provided, however, that, if an in-unit retrofit is on request of a resident of the unit and the resident refuses to allow the retrofit or refuses to vacate the unit so that the retrofit may not be made, Artimus shall be relieved of its obligation to perform such retrofit.

## VII.    TRANSFER OF INTEREST IN PROPERTIES

35.     The sale or transfer of ownership, in whole or in part, of Artimus's interest(s) in Susan's Court, Chelsea Park, or any Additional Property shall not affect its continuing obligation to retrofit, and/or conduct or allow inspections or surveys of, Susan's Court, Chelsea Park, or that Additional Property as specified in this Stipulation, unless Artimus has obtained in writing, as a condition of sale or transfer, the purchaser or transferee's commitment to assume such obligations, so that the purchaser or transferee will be bound by the terms of this Stipulation to make retrofits and allow or conduct inspections or surveys as set forth in this Stipulation, and will be subject to the jurisdiction of this Court.

Case 1:23-cv-02770-PAE   Document 5   Filed 04/04/23   Page 16 of 27

36.     Should Artimus decide to sell or transfer any of its ownership in Susan's Court, Chelsea Park, or any Additional Property in whole or in part, or any portion thereof, prior to the completion of the retrofits specified in this Stipulation for Susan's Court, Chelsea Park, or any Additional Property, Artimus will, at least thirty (30) days prior to completion of the sale or transfer: (a) provide each prospective buyer with a copy of this Stipulation and written notice that the property is subject to this Stipulation, including specifically Artimus's obligations to either (*i*) complete required retrofit work and allow inspections, or (*ii*) assign such obligations to the purchaser or transferee by obtaining the purchaser or transferee's commitment to be bound by this Stipulation, subject to the jurisdiction of this Court; and (b) provide to the United States, by email and first-class or overnight mail, written notice of the owner's intent to sell or transfer ownership, along with a copy of the notice sent to each buyer, and each buyer's name, address and telephone number.

## VIII.   NON-DISCRIMINATION IN OTHER DESIGN AND CONSTRUCTION

37.     Artimus shall design and construct all new Covered Multifamily Dwellings in full compliance with a Standard as defined in Paragraph 13 above.  During the term of this Stipulation, upon reasonable notice, the United States will be permitted reasonable access to such properties to inspect for compliance with such standards, rules, and laws.

38.     For each new Covered Multifamily Dwelling that Artimus constructs during the term of this Stipulation ("New Construction"), Artimus shall retain an FHA compliance consultant (the "FHA Consultant") to help ensure that the as-constructed features at such properties comply with the FHA's Accessible Design Requirements.[2]  Artimus shall direct its employees, agents, and/or contractors to seek the FHA Consultant's advice regarding the selection of appliances (*e.g.*, refrigerators and ranges) and fixtures (*e.g.*, doors, thresholds, and

---

[2]   The FHA Consultant may be the same individual as the FHA Reviewer.

lavatories); the effect of deviations from the architects' plans on the accessibility of conditions at the property; as well as other issues that arise during construction that affect accessibility. Further, prior to the completion of construction of each building, Artimus shall arrange for the FHA Consultant to conduct a visit of the building to identify any construction issues that may result in inaccessible conditions and recommend appropriate solutions.

39.     The agreement or contract between Artimus and the FHA Consultant shall specify that the FHA Consultant is being retained, in part, in connection with the FHA Reviewer's responsibilities under this Stipulation. Further, within thirty (30) days of retaining the FHA Consultant for any New Construction during the term of this Stipulation, Artimus shall provide a copy of this Stipulation to the FHA Consultant and secure the signed statement from the FHA Consultant acknowledging that he or she has received and read this Stipulation and has had an opportunity to have questions about this Stipulation answered. This statement shall be substantially similar to the form of <u>Appendix H</u>.

40.     During the term of this Stipulation, Artimus shall submit, on an annual basis, a certification to the counsel for the United States affirming that they have retained an FHA Consultant for each Covered Multifamily Dwelling under construction during that year and specifying each covered multifamily dwelling for which an FHA Consultant was retained by Artimus to provide advice and the identity (and affiliation, if applicable) of the FHA Consultant. Artimus shall provide this certification within 30 days of the end of each 12-month period from the entry of this Stipulation and Order.

41.     During the term of this Stipulation, Artimus shall maintain, and provide to the United States upon request, the following information and statements regarding any new multifamily dwellings intended to be developed, built, designed, and/or engineered in whole or

in part, by Artimus or by any entities in which Artimus has a position of control as an officer, director, member, or manager, or has more than fifty percent (50%) ownership share:

- the name and address of the project;

- a description of the project and the individual units;

- the name, address, and telephone number of the civil engineer(s) involved with the project;

- a statement from the lead civil engineer(s) involved with the project acknowledging and describing his/her knowledge of and training in the requirements of the FHA and in the field of accessible site design, certifying that he/she has reviewed the engineering documents for site work for the project and that the design specifications therein fully comply with the requirements of the FHA, and stating a Standard with which the design specifications comply;

- the name, address and telephone number of the architect(s) who are employed or retained by Artimus and are involved with the project;

- a statement from the lead disability accessibility professional employed or retained by Artimus, acknowledging and describing his/her knowledge of and training in the requirements of the FHA and the Guidelines, and in the field of accessible site design, certifying that he/she has reviewed the architectural plans for the project and that the design specifications therein substantially comply with the requirements of the FHA, and stating a Standard with which the design specifications comply.

## IX.   PAYMENTS TO AGGRIEVED PERSONS

42.   Within thirty (30) days of the entry of this Stipulation and Order, Artimus shall deposit in a separate account the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000) for the purpose of compensating any aggrieved persons who may have suffered as a result of

discriminatory housing practices by Artimus at Susan's Court, Chelsea Park, or any Additional

Property. This deposited money shall be referred to as the "Initial Settlement Fund."

43.     Within thirty (30) days of entry of this Stipulation and Order, Artimus shall place

on the Artimus website a link to an electronic version of the Notice set forth in Appendix F in an

Adobe Acrobat Portable Document Format ("PDF"). The link should state "Accessibility

Notice" and should appear on the upper half of the website, in a conspicuous font style and color,

in a font size no smaller than the font size for any of the links titled "Home," "About Us,"

"Team," "Featured Projects," "Services," and "Contact" as they appeared on Artimus's website

on February 14, 2023.

44.     Within thirty (30) days of the entry of this Stipulation and Order, Artimus shall

send by electronic mail a copy of the Appendix F Notice to each present resident at Susan's

Court, Chelsea Park, and the Additional Properties. Within seventy-five (75) days of entry of

this Stipulation and Order, Artimus shall provide the United States with proof that the Appendix

F Notice has been sent. The United States may make its own efforts to locate and provide notice

to potential aggrieved persons.

45.     Artimus shall permit the United States, upon reasonable notice, to review any

records that may reasonably facilitate its investigations to locate allegedly aggrieved persons and

make determinations regarding their potential claims. In addition, Artimus shall identify to the

United States any persons who have claimed to be aggrieved by deficient accessibility at Susan's

Court, Chelsea Park, or any Additional Property.

46.     The United States shall investigate the claims of allegedly aggrieved persons and

shall determine which persons are aggrieved and an appropriate amount of damages that should

be paid to each such person. The United States will inform Artimus in writing of each of its

determinations, together with a copy of a sworn declaration from each aggrieved person setting

forth the factual basis of the claim. If the United States determines that the Initial Settlement Fund is insufficient to compensate all aggrieved persons at Susan's Court, Chelsea Park, and the Additional Properties, the United States shall be entitled to make determinations that award aggrieved persons, in the aggregate, a total amount exceeding the Initial Settlement Fund, but not exceeding ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($150,000) in total.

47.    If Artimus disputes the amount of a payment to an aggrieved person, Artimus shall, within fourteen (14) days of receiving notice of a determination from the United States (a "Determination"), provide a written objection to the United States, along with any information or documents that they believe may refute the aggrieved person's claim. The United States shall give due consideration to any objections it receives from Artimus and shall submit, following any objection, its reconsidered determination (a "Reconsidered Determination") to Artimus, in writing, setting forth the aggrieved person and the amount that the aggrieved person shall be paid. If Artimus disputes the Reconsidered Determination, it may—within twenty (20) days after receiving the Reconsidered Determination—file an application with the Court to reinstate this case and request that the Court adjudicate Artimus's objection to the Reconsidered Determination. In such an event, the Court may sustain or overrule the objection.

48.    Artimus shall, no later than twenty (20) days after receiving a Determination to which no objection has been made, or twenty-five (25) days after receiving a Reconsidered Determination to which no objection has been filed with the Court, or ten (10) days after any decision by the Court overruling a filed objection, whichever is earliest, deliver to the aggrieved persons checks in the amounts identified by the United States, with proof of delivery provided to the United States. In no event shall the aggregate of all such checks exceed the amount of $150,000 plus any accrued interest. No aggrieved person shall be paid until he/she has executed

and delivered to the United States the release at <u>Appendix G</u> and the United States has delivered the original of such executed release to Artimus.

49.     No adverse action shall be taken against any person because such person cooperates with the United States in its investigations, makes a claim, or seeks to make a claim under this Stipulation.

50.     In the event that less than the total amount in the Initial Settlement Fund including accrued interest is distributed to aggrieved persons, and after the United States determines that no further aggrieved persons will be identified within the term of this Stipulation, then, no later than the earlier of (a) when the United States determines that no further aggrieved persons will be identified, or (b) the expiration of this Stipulation, any remainder in the Initial Settlement Fund shall be paid to a not-for-profit organization proposed by Artimus, and approved by the United States, which provides services in connection with increasing housing accessibility for people with disabilities.  In the event that the parties cannot agree upon an organization to receive the remainder amount, the United States shall apply to the Court to reinstate this action to resolve the dispute.

## X. Civil Penalty

51.     Within thirty (30) days of the date of entry of this Stipulation, Artimus shall pay a civil penalty of FIVE THOUSAND DOLLARS ($5,000) pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.  Artimus shall pay said sum by submitting a check made payable to the "United States of America" to the United States.

## XI. Educational Program

52.     Within thirty (30) days of the entry of this Stipulation and Order, Artimus shall provide a copy of this Stipulation to all of its agents and employees involved in the design or construction of Susan's Court, Chelsea Park, or any Additional Property and secure the signed

statement from each agent or employee acknowledging that he or she has received and read this Stipulation, and has had an opportunity to have questions about this Stipulation answered.  This statement shall be substantially similar to the form of <u>Appendix H</u>.  During the term of this Stipulation, any new employee, agent, or supervisor of Artimus who will be involved in the design or construction of a new Covered Multifamily Dwellings shall, within thirty (30) days after the date he or she commences an agency or employment relationship with Artimus, be given a copy of this Stipulation by Artimus, and Artimus shall require each such new agent or employee to sign a statement, acknowledging that he or she has received and read this Stipulation, and has had an opportunity to have questions about this Stipulation answered.  This statement shall be substantially similar to the form of <u>Appendix H</u>.

53.     Within 30 days of the entry of this Stipulation and Order, Artimus shall provide a copy of this Stipulation to all its agents and employees involved in rental of units at Susan's Court, Chelsea Park, or any Additional Property, and secure the signed statement from each agent or employee acknowledging that he or she has received and read this Stipulation, and has had an opportunity to have questions about this Stipulation answered.  This statement shall be substantially similar to the form of <u>Appendix H</u>.

54.     During the term of this Stipulation any new employee, agent, or supervisor of Artimus who will be involved in the renting of units at Susan's Court, Chelsea Park, or any Additional Property shall, within 30 days after the date he or she commences an agency or employment relationship with Artimus, be given a copy of this Stipulation by Artimus, and Artimus shall require each such new agent or employee to sign a statement, acknowledging that he or she has received and read this Stipulation, and has had an opportunity to have questions about this Stipulation answered.  This statement shall be substantially similar to the form of <u>Appendix J</u>.

55.     In lieu of providing individuals or entities with copies of this Stipulation as required by the preceding paragraphs of Section XI, Artimus may instead provide a summary of this Stipulation with the United States' advance written approval of the form and content of any proposed summary.

56.     Artimus shall also ensure that its employees and agents who have supervisory authority over the design and/or construction of Covered Multifamily Dwellings have a copy of, are familiar with, and personally have reviewed, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991), and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act (August 1996, Rev. April 1998).  Artimus and its employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of multifamily dwellings at issue in this case shall be informed of those portions of the FHA that relate to accessibility requirements, reasonable accommodations and reasonable modifications.  The educational program provided to employees not engaged in design, construction, or maintenance, such as sales and rental employees, may focus on the portions of the law that relate generally to accessibility requirements as opposed to technical design and construction requirements.

57.     Within ninety (90) days of the entry of this Stipulation and Order, Artimus and all employees and agents whose duties, in whole or in part, involve or will involve supervision over the development, design and/or construction of multifamily dwellings of the type at issue in this case shall undergo training on the design and construction requirements of the FHA.  The training shall be conducted by a qualified third-party individual, not associated with Artimus or its counsel, and approved by the Department of Justice; and any expenses associated with this training shall be paid by Artimus.  Artimus shall provide to the United States, thirty (30) days

23

before the training, the name(s), address(es) and telephone number(s) of the trainer(s); and copies of any training outlines and materials to be distributed by the trainers. Artimus shall provide to the United States, thirty (30) days after the training, certifications executed by Artimus and covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix J.

### XII.    NOTICE OF ARTIMUS'S NON-DISCRIMINATION POLICY

58.     Within thirty (30) days of the date of entry of this Stipulation and Order, Artimus shall post and prominently display in the sales or rental offices of all Covered Multifamily Dwellings owned or operated by Artimus, a sign no smaller than ten (10) by fourteen (14) inches indicating that all dwellings are available for rental on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

59.     During the term of this Stipulation, in all future advertising in newspapers and electronic media, and on pamphlets, brochures and other promotional literature regarding the existing complexes or any new complexes that Artimus may develop or construct, Artimus shall place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the FHA.

60.     One hundred and eighty (180) days after the date of entry of this Stipulation and Order, Artimus shall submit to the United States an initial report regarding the signed statements of Artimus's employees and agents who have completed the training program specified in paragraph 57 of this Stipulation. Thereafter, during the term of this Stipulation, Artimus shall, on the anniversary of the entry of this Stipulation and Order, submit to the United States a report containing the signed statements of new employees and agents that, in accordance with paragraph 57 of this Stipulation, they have received and read this Stipulation or a summary

thereof, and had an opportunity to have questions about this Stipulation or such summary answered, except that the last report shall be due sixty (60) days prior to the anniversary.

61.     For the term of this Stipulation, Artimus shall advise the United States in writing within thirty (30) days of receipt of any written administrative or judicial fair housing complaint regarding any property owned, managed, and/or designed or constructed by them, or, to the extent known, against any employees or agents of Artimus working at or for any such property, regarding discrimination on the basis of disability in housing.  Upon reasonable notice, Artimus shall also provide the United States all information it may request concerning any such complaint.  Artimus shall also advise counsel for the United States, in writing, within thirty (30) days of the resolution of any complaint.

62.     For the term of this Stipulation, Artimus is required to preserve all records related to this Stipulation for Susan's Court, Chelsea Park, the Additional Properties and any other Covered Multifamily Dwellings designed, constructed, owned, or acquired by them during the term of this Stipulation.  Upon reasonable notice to Artimus, representatives of the United States shall be permitted to inspect and copy any records of Artimus or inspect any developments or residential units under Artimus's control bearing on compliance with this Stipulation during business hours, provided, however, that the United States shall endeavor to minimize any inconvenience to Artimus from such inspections.

### XIII.   LOW-INCOME HOUSING TAX CREDIT PROGRAM COMPLIANCE

63.     Artimus is hereby notified that, in the event that Artimus fails to substantially comply after notice and reasonable opportunity to cure with any of the terms of this Stipulation and the United States obtains an order establishing such noncompliance, the United States may take any appropriate action, including but not limited to notifying the appropriate state housing finance agency of the violation.  *See* 26 U.S.C. § 42(m)(1)(B)(iii).

## XIV. TERM OF STIPULATION

64.     The term of this Stipulation shall commence upon entry of this Stipulation and Order and, subject to Paragraphs 26, 34, and 36 above, expire two (2) years following such entry or 30 days from the date that the Inspector certifies that that all of the necessary modifications for which Artimus has been provided access have been made, whichever date is later.

65.     By executing this Stipulation, the parties agree that in the event that Artimus engages in any future conduct during the term of this Stipulation that leads to a determination of a violation of the FHA, such conduct shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

66.     The term of this Stipulation may be extended by the mutual written agreement of the parties.

67.     In the event the United States reinstates this Action pursuant to Paragraphs 20 and/or 47, and/or 50 above, Artimus agrees pursuant to Federal Rule of Civil Procedure 15(a)(2) that the United States may amend the complaint to assert any claims that have not been released under this Stipulation.

68.     The parties agree that the only appropriate remedy for either party's failure to perform any non-monetary obligation contained in this Stipulation is specific performance.

69.     The United States and Artimus shall endeavor, in good faith, to resolve any differences regarding interpretation of and compliance with this Stipulation prior to bringing such matters to the Court for resolution.

## XV. TIME FOR PERFORMANCE

70.     Any time limits for performance imposed by this Stipulation may be extended by the mutual written agreement of the United States and Artimus, the consent to which shall not be unreasonably denied or withheld.

## XVI.   MISCELLANEOUS

71.     The United States and Artimus will bear their own costs and attorney's fees associated with this litigation.

72.     The United States and Artimus understand and agree that this Stipulation and the appendices thereto contain the entire agreement between them, and that any statements, representations, promises, agreements, or negotiation, oral or otherwise, between the parties or their counsel that are not included herein shall be of no force or effect.

73.     This action shall be dismissed upon entry of this Stipulation and Order, subject to the right of the parties to reinstate the Action as provided in Paragraphs 20, 47, and 50 above.

DATED:  April  3, 2023                      DATED:  April 3, 2023
         New York, New York                         New York, New York

*For the United States*:                       *For Artimus*:

DAMIAN WILLIAMS                         LAW OFFICE OF KENNETH
United States Attorney                        G. ROBERTS

By: _____            By: *Kenneth Roberts*
DAVID J. KENNEDY                           KENNETH G. ROBERTS
Assistant United States Attorneys           2 Park Avenue, 23rd Fl.
86 Chambers Street, 3rd Floor              New York, New York 10016
New York, New York  10007               Tel.: (212) 616-3657
Tel.: (212) 637-2733                          ken@krobertslawoffice.com
david.kennedy2@usdoj.gov

DATED:  April 7, 2023
         New York, New York

SO ORDERED:

*Paul A. Engelmey*
_____
UNITED STATES DISTRICT JUDGE